[Cite as *Hollins v. Anderson*, 2012-Ohio-1261.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

DWIGHT HOLLINS, et al.

     Appellants

     v.

ANTOINETTE ANDERSON, et al.

     Appellees

C.A. No.     11CA010001

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    06CV145370

DECISION AND JOURNAL ENTRY

Dated: March 26, 2012

DICKINSON, Judge.

BACKGROUND

**{¶1}** When the pastor of The Almighty Church died, two factions vied for control of the church. One of the factions, consisting of Dwight Hollins, Grace Barnes, Daniel Dotson, and Ralph Fox, claimed to be a majority of the church's board of directors and sued the other faction, consisting of Michael Martin and Antoinette Anderson, alleging that Mr. Martin and Ms. Anderson had misspent church funds. It also sued Lorain National Bank to enjoin it from allowing Mr. Martin and Ms. Anderson to use the church's bank accounts. Following a hearing, the trial court issued a preliminary injunction prohibiting anyone from spending or disposing of any church assets or encumbering any church property without the joint, written consent of Ms. Anderson and Elizabeth Williams. Despite the order, Mr. Hollins obtained a $100,000 loan from the bank in the name of the church after he represented that he was president of the church's board. The bank later filed a counterclaim against Mr. Hollins seeking indemnification for the

loan. It also made the church a party to the counterclaim seeking a declaration that the church was responsible for the loan. Meanwhile, the two factions entered into a settlement agreement, under which they agreed to let 14 undisputed "Arch Powers" decide the fate of the church. The Arch Powers met and decided that the alleged "Directors" did not constitute the governing body of the Church. The trial court, therefore, dismissed the Hollins faction's complaint, concluding that, as mere members, they did not have standing to bring claims on behalf of the church. The court ordered the Hollins faction to return any church property that was in its members' possession to the church's secretary, which it identified as Ms. Anderson. The Hollins faction moved to modify the court's order, arguing that the Arch Powers had named Ms. Williams as the church's secretary, not Ms. Anderson. The court, however, denied the motion. The court also granted summary judgment to the church, concluding that it was not responsible for the $100,000 loan. It further granted summary judgment to the bank on its claim against Mr. Hollins, ordering him to indemnify the bank for any loss or damage it suffers as a result of the loan. The Hollins faction has appealed, arguing that the trial court incorrectly denied its motion to modify and incorrectly granted summary judgment to the church and the bank. We affirm because any error by the trial court in denying the motion to modify was harmless and the trial court correctly ordered Mr. Hollins to indemnify the bank.

## MOTION TO MODIFY

{¶2} The Hollins faction's first assignment of error is that the trial court incorrectly denied its motion to modify the court's October 20, 2010, order, which directed them to "return all funds, documents, property and items of [the Church] in their possession . . . to . . . The Almighty Church in care of the Church's secretary, [Ms.] Anderson." It has argued that, by virtue of action taken by the Arch Powers in November 2008, Ms. Anderson was not the

church's secretary and did not hold any other position of authority at the time of the court's order. According to the Hollins faction, the individual who was church secretary on October 20, 2010, was Ms. Williams. It has argued that, considering that the court approved the parties' settlement agreement, which placed the Arch Powers in control of the church, the court should have followed its own order and directed its members to return any church items in their possession to Ms. Williams, not Ms. Anderson.

{¶3} We conclude that, even if the trial court misidentified the person who was secretary of the church at the time of its order, the error was harmless. Civ. R. 61. It is evident from the court's order that the court wanted the Hollins faction's members to return church items to an authorized representative of the church and that it merely selected the church's secretary to be that representative. The court was not involved in the day to day operations of the church, having placed governing authority in the hands of the Arch Powers by virtue of the settlement agreement. The Arch Powers, consequently, were authorized to change the church's secretary under whatever terms and conditions they adopted. The fact that the court, for convenience sake, identified Ms. Anderson as the person whom it understood to be the secretary did not preempt the Arch Powers' authority. It would not make any sense for the trial court to order the Hollins faction members to return church property to someone who was not part of the church's administration. Accordingly, to the extent that the Arch Powers or the church administration established by the Arch Powers has selected someone other than Ms. Anderson to be the church's secretary, we interpret the trial court's order as directing the members of the Hollins faction to return any church items in their possession to that individual, not Ms. Anderson. Any error that the trial court may have committed in denying the motion to modify the order was harmless. The Hollins faction's first assignment of error is overruled.

## INDEMNIFICATION

{¶4} The Hollins faction's second assignment of error is that the trial court incorrectly granted summary judgment to the bank and the church regarding the $100,000 loan. It has argued that the court incorrectly invalidated the loan as to the church and incorrectly made Mr. Hollins personally responsible for the loan.

{¶5} According to the Hollins faction, Mr. Hollins's affidavit created a genuine issue of material fact regarding whether the church authorized the loan. In his affidavit, Mr. Hollins asserted that the church's board of directors passed a resolution in July 2006 that authorized him to obtain the loan to make necessary repairs to the church's properties. He also asserted that all of the proceeds from the loan were used to pay necessary church expenses.

{¶6} We conclude that the Hollins faction is estopped from asserting that the alleged board of directors had authority to approve the loan. See Black's Law Dictionary 589 (8th ed. 2004) (defining estoppel as "[a] bar that prevents one from asserting a claim or right that contradicts what one has said or done before or what has been legally established as true."). In his affidavit, Mr. Hollins asserted that the board of directors consisted of him, Ms. Barnes, Mr. Dotson, Mr. Fox, Joyce Fox, Jerry Anderson, and Ella Maye. In June 2008, however, the Hollins faction agreed to let 14 undisputed Arch Powers decide whether those same seven individuals "constitute the governing body of the [church]." The Arch Powers determined that they did not. The Arch Powers also determined that a set of bylaws adopted by those "Directors" in 2005 was not the church's governing document. Accordingly, because the Hollins faction agreed to let the Arch Powers decide whether the seven so-called "Directors" controlled the church, and the Arch Powers concluded that they did not, the Hollins faction could not argue afterwards that those individuals had authority to give Mr. Hollins permission to obtain a loan for the church. See

*Huffman v. Huffman*, 10th Dist. Nos. 02AP-101, 02AP-698, 2002-Ohio-6031, at ¶26 ("Courts in Ohio are generally in accord . . . that a party who allows a dispute to go to arbitration and voluntarily participates in arbitration proceedings, without objection or challenge to the authority, jurisdiction or power of the arbitrator to resolve a particular dispute, is deemed to have consented to the arbitration and is estopped from contesting the arbitrator's authority after suffering an adverse arbitration award.").

{¶7} The Hollins faction has next argued that the trial court incorrectly considered a memorandum filed by Attorney John Keyse-Walker, who purported to represent the church in this action. It has argued that Mr. Keyse-Walker failed to present any evidence that someone with authority over church affairs authorized him to represent the church. According to the Hollins faction, Mr. Keyse-Walker represented, at best, one or more unidentified individual members of the church who did not have authority to hire counsel for the church or standing to litigate any of the claims at issue in this case.

{¶8} After the bank made the church a party to its counterclaim against Mr. Hollins, the lawyer for the Hollins faction filed an answer on behalf of the church. One month later, Mr. Keyse-Walker also filed an answer on behalf of the church. The Hollins faction moved to strike the answer filed by Mr. Keyse-Walker, arguing that he did not have authority to file pleadings on behalf of the church. Mr. Keyse-Walker, in turn, moved to strike the answer filed by the Hollins faction's lawyer, arguing that that lawyer had a conflict of interest. After the parties entered into the settlement agreement, the court denied both motions as moot.

{¶9} The record does not contain a transcript of the June 2, 2008, hearing at which the parties' settlement agreement was read into the record. At the following hearing, however, Mr. Keyse-Walker appeared "[o]n behalf of Defendant Almighty Church" without objection by the

Hollins faction. The Hollins faction also served discovery requests on Mr. Keyse-Walker, who it identified as "Attorney for Third-Party Defendant The Almighty Church." Accordingly, upon review of the record, we conclude that the Hollins faction has forfeited its argument that Mr. Keyse-Walker does not represent the church in this matter.

{¶10} Mr. Hollins has argued that the trial court incorrectly concluded that he is personally responsible for the loan. The court ordered Mr. Hollins to "indemnify [the bank] . . . from any loss or damages suffered as a result of the execution by [Mr.] Hollins of the promissory note and mortgage instrument described in the Complaint." Mr. Hollins has argued that the loan was not a personal loan, that the proceeds were used for church obligations, and that he received no personal benefit from the loan. He has also argued that the church authorized him to secure the loan and ratified the loan after it was obtained.

{¶11} We have already noted that the seven individuals who comprised the "Board of Directors" did not have authority to act on behalf of the church. Accordingly, that group could not have authorized Mr. Hollins to obtain a loan for the church. Moreover, at the time Mr. Hollins obtained the loan, the trial court had prohibited the parties from spending, transferring, disbursing, deeding, encumbering, or otherwise disposing of any "assets or property of the Church . . . without the joint, written consent of [Ms.] Williams and [Ms.] Anderson . . . or an order of Court." The promissory note signed by Mr. Hollins was not signed by Ms. Anderson or approved by the court and, therefore, violated the injunction.

{¶12} In *Farmers' Co-operative Trust Company v. Floyd*, 47 Ohio St. 525 (1890), the Ohio Supreme Court held that "[a] person who contracts, as agent, without having in fact authority to do so, is personally responsible to those who, in ignorance of his want of authority, contract with him, though he act in good faith, believing that he is invested with such authority."

*Id.* at paragraph one of the syllabus. The Court explained that, even if an agent has a bona fide belief that he has authority to act on behalf of the principal, he is as responsible as if he had intended to defraud the other party. *Id.* at 538. It reasoned that, between two innocent parties, "it is perfectly just that he who makes such [a mistaken assertion of authority] should be personally responsible for the consequences, rather than that the injury should be borne by the other party, who has been misled by it." *Id.* (quoting Joseph Story, Commentaries on the Law of Agency, § 264 at 313 (9th ed. 1882)). The trial court, therefore, correctly concluded that Mr. Hollins must indemnify the bank if it suffers any loss on the loan, even though he thought he had been properly authorized by the church to obtain the loan. Whether Mr. Hollins received personal benefit from the loan is immaterial.

{¶13} Mr. Hollins has also argued that the court's decision allows the church to retain the benefit of the loan without the obligation to repay it. His argument appears to be that the church has been unjustly enriched by the loan. Mr. Hollins, however, did not file any claims against the church. Accordingly, he has forfeited his argument.

{¶14} Regarding whether the church ratified the loan, Mr. Hollins has argued that the Arch Powers accepted the benefits of the loan, did not repudiate it, and have, in fact, been repaying the loan. Mr. Hollins, however, did not argue to the trial court that the Arch Powers ratified the loan. Consequently, he has forfeited that argument. *See Holman v. Grandview Hosp. & Med. Ctr.*, 37 Ohio App. 3d 151, 157 (2nd Dist. 1987) ("Issues not raised . . . in the trial court cannot be raised for the first time on appeal.").

{¶15} Mr. Hollins has also argued that the trial court's preliminary injunction did not prohibit the church from obtaining the loan because the church was not a party to the case at the time of the court's order. According to Mr. Hollins, the purpose of the order was to assure that

the assets of the church were not dissipated. The loan, on the other hand, was to pay pre-existing debt, to maintain and repair the church's buildings, and to pay other expenses of the church.

{¶16} Mr. Hollins's argument ignores the fact that the Hollins faction members filed their action as "a majority of the Board of Directors of [the church]" and that, according to Mr. Hollins's affidavit, he and his co-plaintiffs were four of the five directors who authorized him to obtain the loan. Ignoring for the moment that the Arch Powers determined that the alleged board of directors did not have any authority to act on behalf of the church, the Ohio Supreme Court has recognized that under certain circumstances, even nonparties to an injunction may be bound by it. *Planned Parenthood Ass'n of Cincinnati Inc. v. Project Jericho*, 52 Ohio St. 3d 56, 61 (1990). Whether others are also bound "depends upon whether they are 'persons in active concert or participation with [the parties to the action].'" *Id.* (quoting Civ.R. 65(D)). "Nonparties are bound by an injunction to ensure 'that defendants [do] not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding.'" *Id*. (quoting *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945)). "The determination of breadth must be made on the facts of each case." *Id.* "Persons acting in concert or participation with a party against whom an injunction has been issued must have actual notice of the injunction in order to be bound by it." *Id*. Given the close relationship between the Hollins faction and the "Directors" who approved the loan, we conclude that the trial court correctly concluded that the Hollins faction could not circumvent the injunction by doing through the church what its members could not do individually. Furthermore, even though the loan appears to have been well-intentioned and the proceeds well used, there was nothing that prevented Mr. Hollins from seeking the court's approval before obtaining the loan.

{¶17} Mr. Hollins has further argued that it was unjust for the trial court to impose personal liability on him as a sanction for violating the court's injunction. We explained earlier that, in requiring Mr. Hollins to indemnify the bank for any loss on the loan, the court was simply applying well-established principles of agency law. *Farmers' Co-operative Trust Company v. Floyd*, 47 Ohio St. 525, paragraphs one and two of the syllabus (1890). As the Supreme Court explained in *Floyd*, the law "implied a promise on the part of [Mr. Hollins] that in making the contract with the [bank] [he] had authority to bind the [church] [he] assumed to represent; and if [he] had not, [he is] answerable for the consequences." *Id*. at 541. The court did not make Mr. Hollins personally responsible for the loan as a sanction for violating the preliminary injunction. Rather, the court granted summary judgment to the bank on its counterclaim against Mr. Hollins.

{¶18} The trial court correctly ordered Mr. Hollins to indemnify the bank for any loss that it suffers as a result of the unauthorized loan. The Hollins faction's second assignment of error is overruled.

## CONCLUSION

{¶19} The trial court correctly denied the Hollins faction's motion to modify order and correctly ordered Mr. Hollins to indemnify Lorain National Bank for any loss it suffers as a result of his execution of the loan. The judgment of the Lorain County Common Pleas Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

CLAIR E. DICKINSON
FOR THE COURT

WHITMORE, P. J.
CONCURS.

CARR, J.
DISSENTS.

APPEARANCES:

AARON H. BULLOFF, Attorney at Law, for Appellants.

JOHN KEYSE-WALKER, Attorney at Law, for Appellee.

JAMES L. HARDIMAN, Attorney at Law, for Appellees.

JAMES W. MOENNICH and MICHAEL R. NIEDERBAUMER, Attorneys at Law, for Appellee.